## Albert Kujawa, Administrator, Appellee, v. Chicago & Alton Railroad Company, Appellant.

### Gen. No. 5,659.

1. RAILROADS—*death at crossing.* Where it is alleged that deceased was struck at a certain street crossing by defendant's engine and killed, plaintiff to recover must show that deceased, while using due care, came to her death at such crossing because of at least one of the negligent acts charged.

2. RAILROADS—*crossing accident.* A verdict for plaintiff in an action for death alleged to have resulted from injuries at a railroad street crossing cannot be sustained where none of plaintiff's witnesses saw decedent struck, two women who had been picking up coal testified that the accident happened at the crossing, and defendant's fireman and engineer testify that they struck decedent some distance away from the crossing and are corroborated by the circumstances proved.

3. RAILROADS—*crossing accident.* In an action against a railway company for death caused by its alleged negligence at a crossing, an instruction as to the result in case "defendant failed and neglected to ring a bell or blow the whistle as charged in one count" is not misleading although a count charges failure to ring a crossing bell, for though it may be construed as applying to the crossing bell such construction is improbable, and neither is it misleading as requiring the defendant to both ring a bell and sound a whistle.

Action in case for death by alleged wrongful act. Appeal from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the April term, 1912. Reversed and remanded. Opinion filed October 15, 1912.

J. L. O'DONNELL, T. F. DONOVAN and J. A. BRAY, for appellant; WINSTON, PAYNE, STRAWN & SHAW, of counsel.

BAN, McNAUGHTON & BAN, for appellee.

MR. JUSTICE WHITNEY delivered the opinion of the court.

Appellee's intestate was killed in the city of Joliet on the twenty-fourth day of January, 1911, by a pas-

senger train, on the tracks of appellant, and this suit is brought to recover damages therefor, for the benefit of the next of kin.

The declaration consists of seven counts, each of which alleges that deceased was killed while attempting to go across the tracks of appellant at a street crossing on Ohio street in the city of Joliet. The negligence alleged in the first count of the declaration is negligent and careless driving and management of the engine and cars; by the second count, failure to ring a bell, or sound a whistle; by the third count, running at a high rate of speed without giving warning, and when the view of the tracks was obstructed by appellant's cars, negligently permitted to stand on appellant's tracks near the crossing; by the fourth count, a violation of a city ordinance with reference to gates and flagman; by the fifth count, violation of a city ordinance limiting the speed to twenty miles an hour; by the sixth count, that there were gates and a gateman, and that appellant had a gateman, and that the gateman failed to lower his gates when the engine and train were approaching the crossing; and by the seventh count, that appellant had a crossing bell at the crossing of Ohio street, which could be rung when a train was approaching the crossing; that deceased relied thereon; that the gateman in charge of the gates at the crossing was in charge of the crossing bell, and that he failed to ring it, so as to warn persons of the approach of the train, and that in consequence of such failure deceased was struck and killed. Issue was joined, and a trial had. Motions were made at the close of the plaintiff's case and at the close of all the evidence, respectively, to exclude all evidence, and instruct a verdict of not guilty. The motions were overruled, to which exceptions were duly taken. The jury returned a verdict finding the defendant guilty, and assessing the plaintiff's damages at $3,000. A motion for a new trial was interposed and overruled, and judgment was entered on the verdict, and the case comes here on appeal.

In order for appellee to recover, it was necessary for him to prove (1) that deceased came to her death at the crossing in Ohio street; (2) by reason of some one at least of the acts of negligence charged; (3) while she was in the exercise of due care for her own safety. It becomes the duty of this court to review the evidence, and if we find that upon any one of those three things essential to have been shown by appellee, the finding of the jury is manifestly against the weight of the evidence, then it becomes our duty to reverse the judgment. Trybula v. Plamondon Mfg. Co., 153 Ill. App. 298; Chicago & A. R. Co. v. Heinrich, 157 Ill. 388; Chicago & E. R. Co. v. Meech, 163 Ill. 305; Chicago City Ry. Co. v. Mead, 206 Ill. 174.

Upon a careful consideration of the evidence, we are of the opinion that there is a clear preponderance of the evidence, showing that deceased came to her death, not on Ohio street, but at from fifty to two hundred feet south thereof, and that she was at the latter place, picking up coal, when she was struck, and that her body was carried on the pilot of the engine until after the engine reached Ohio street. No witness for appellee saw deceased struck. The witnesses, Helen Furmankevicz and Mary Zorosta, each testified they did not see the engine strike deceased. These two witnesses were going south, down the Elgin, Joliet & Eastern Railway tracks which lie some seventy-two feet to the east of appellant's tracks. It was cold that morning, and rather dark. These women were clad for cold weather, each with some wrap about the head, one with a fascinator over her head, the other with a shawl on her head. They were talking with each other, paying no attention to anything but their own conversation, and while thus walking south on the Elgin, Joliet & Eastern tracks, deceased passed in front of and close to them, at right angles going west. They heard and saw nothing more of her until they heard a scream, and then found deceased had been struck by a train, which they did not see until after they heard the scream.

Appellant's fireman testified that the engine struck the woman one hundred and eighty feet south of Ohio street; that as soon as deceased was struck, they knew they had hit her, and that afterwards he found a bag of coal on the engine pilot. He also testified to finding marks on the ties where something, or somebody, had been dragged over them, and that the marks commenced six rail lengths south of Ohio street, and extended north to the planking in the street, and there stopped. Appellant's engineer testified that deceased was struck about one hundred and eighty feet south of Ohio street, and that when the engine struck her, she laid back on the pilot, and rode there until they got to Ohio street and that the planks in the street tore her off from the pilot, and she fell on the tracks. Before he struck deceased he saw the coal sack, and saw the woman, and then knew it was a woman. He also testified to the marks on the ties. When the body was found no shoes were on it. Several witnesses, at least two, testified to finding the shoes, one shoe south of the track, the other at the planking. The engineer picked up one shoe that was south of Ohio street, looked at it, probably carried it a little ways while looking at it, and then threw it down.

The engineer testified that when he first saw the woman, the train was going between twelve and fifteen miles an hour, and that at the rate of fifteen miles an hour it would take two seconds to go about fifty feet. Both the engineer and fireman testify that the bell was ringing, and both testify to the sharp blasts of the whistle. Several other witnesses testify also to the whistle sounding. The gateman testified that he lowered the east gate before the train came to the crossing. When it is borne in mind that the east gates are east of the Elgin, Joliet & Eastern tracks, the two women first called by appellee might well have been mistaken about the gates being up. It is seventy-two feet from the west rail of the Elgin, Joliet & Eastern tracks to appellant's east rail. The two

women were walking south on the Elgin, Joliet & Eastern tracks. Deceased passed in front of them going west and they proceeded south. It would be just as consistent to believe deceased turned south after passing these women, and before reaching appellant's tracks, as to believe she kept on west across appellant's tracks. The engineer and the fireman testified positively to striking deceased south of Ohio street, and carrying her on the pilot of the engine to the street. They were in a better position to know where she was struck than these two women, who did not see her struck, and who did not notice anything out of the ordinary until they heard the scream. The distance was very short; the time it would take the train to travel that distance was very brief; the women interested only in their own conversation and walking south after they had passed the deceased; these are all circumstances indicating that these women were mistaken as to the place where deceased was struck, and that more time had elapsed, and that they had walked further south than they supposed, when they heard the scream and turned about. There is some evidence, indeed all of appellant's witnesses who testify to being on the ground so state, that one of the train crew was the first one at the spot where the injured woman was found, and that no women were there until later. In this, however, either the women or appellant's witnesses might have been mistaken in the excitement of the moment. In our opinion the testimony of the engineer and fireman, corroborated by the circumstances proven, as it is, is the more reliable evidence as to where deceased was struck. We think the proof shows by a strong preponderance that deceased was not struck by appellant's engine on Ohio street, but was struck south thereof, and carried north to Ohio street on the engine pilot. Therefore we must reverse the judgment of the court below. Considering the instructions as a series, we find no reversible error in them, although it would have been more tech-

nically accurate for the third instruction given for appellee to have stated, ''from all the other surrounding circumstances appearing in evidence,'' than ''from all the other surrounding circumstances appearing on the trial.'' Illinois Commercial Men's Ass'n v. Perrin, 139 Ill. App. 543; Ames v. Thren, 136 Ill. App. 568.

The ninth instruction given for appellee is criticised at quite a length in appellant's argument. If that instruction means that all appellee was required to prove was that the deceased was exercising due care for her own safety at the time she was actually struck, it would be subject to the ruling in Krieger v. Aurora, E. & C. R. Co., 242 Ill. 544, reversing this court in case of the same title, 148 Ill. App. 613. That instruction uses this language, however, ''was crossing the railroad track of the defendant on Ohio street at the time she was struck,'' and we are disposed to hold that the language used brings the instruction within Hornung v. Decatur Railway & Light Co., 241 Ill. 128, which holds good an instruction similar in that. regard. A very little change of the language, however, would make the instruction clearly include the necessary requirement that she should have been in the exercise of due care as she approached the railroad track. It is also contended this instruction required appellant to both ring a bell and sound a whistle. The language used in that regard is such that lawyers might put different constructions on it, but when you look carefully at it, it is found that it includes this language, ''and that the defendant failed and neglected to ring a bell, or blow the whistle as charged in one count of the declaration,'' which it seems to us, renders the instruction free from that criticism. There was one count charging failure to ring a crossing bell, and the duty of appellant to ring it. To support that count, it would have required proof of more than the mere failure to ring the crossing bell before appellee could have recovered. It is possible for the language used in this instruction as to a bell to be

construed so as to apply to the crossing bell, but in view of the fact that used in the same connection was the language, "as charged in one count of the declaration," such a construction would have been highly improbable, and we do not think the jury were misled in that regard.

If the instruction should be given again, however, it would be better to so modify it as not to lead to the same or similar criticism.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*